[933 NE2d 738, 907 NYS2d 139]

CONTINENTAL CASUALTY COMPANY et al., Appellants, v PRICEWA-TERHOUSECOOPERS, LLP, Respondent.

EAGLE PARTNERS, L.P., et al., Appellants, v PRICEWATERHOUSE-COOPERS, LLP, Respondent.

JEREMY M. JONES et al., Appellants, v PRICEWATERHOUSECOO-PERS, LLP, Respondent.

Argued June 2, 2010; decided June 29, 2010

## POINTS OF COUNSEL

*Pachulski Stang Ziehl & Jones LLP,* New York City (*Steven J. Ahmuty, Jr., Ilan D. Scharf* and *Dean A. Ziehl* of counsel), and *Susman Godfrey LLP,* Los Angeles, California (*Marc M. Seltzer* of counsel), for appellants. I. PricewaterhouseCoopers, LLP (PwC) owed an independent duty to plaintiffs, and plaintiffs' claims against PwC are direct and not derivative of the partnership's claims. (*Ultramares Corp. v Touche,* 255 NY 170; *State St. Trust Co. v Ernst,* 278 NY 104; *United States v Arthur Young & Co.,* 465 US 805; *Solutia Inc. v FMC Corp.,* 385 F Supp 2d 324; *Abrams v Donati,* 66 NY2d 951; *General Rubber Co. v Benedict,* 215 NY 18; *Kono v Roeth,* 237 App Div 252; *Bookout v Schine Chain Theatres,* 253 F2d 292; *Hirsch v Arthur Andersen & Co.,* 72 F3d 1085; *Glusband v Fittin Cunningham Lauzon, Inc.,* 582 F Supp 145.) II. Plaintiffs' claims are supported by the Court of Appeals' decision in *Hotaling v Leach & Co.* (247 NY 84 [1928]), which the lower courts completely failed to acknowledge and apply. (*Kaufmann v Delafield,* 224 App Div 29; *Stutman v Chemical Bank,* 95 NY2d 24; *Bernstein v Kelso & Co.,* 231 AD2d 314; *Primavera Familienstifung v Askin,* 130 F Supp 2d 450, 137 F Supp 2d 438; *Abrams v Donati,* 66 NY2d 951; *Serino v Lipper,* 47 AD3d 70; *Williamson v PricewaterhouseCoopers LLP,* 9 NY3d 1; *Wight v BankAmerica Corp.,* 219 F3d 79; *Bullmore v Ernst & Young Cayman Is.,* 20 Misc 3d 667; *Shearson Lehman Hutton, Inc. v Waggoner,* 944 F2d 114.)

*Orrick, Herrington & Sutcliffe LLP,* New York City (*J. Peter Coll, Jr., Steven J. Fink* and *Joshua M. Cutler* of counsel), and *Office of General Counsel, PricewaterhouseCoopers LLP* (*Andrew Plunkett* of counsel), for respondent. I. The lower courts correctly held that plaintiffs had failed to adduce evidence sufficient to rebut PricewaterhouseCoopers LLP's prima facie showing that they lacked a direct injury. (*Schultz v Von Voight,* 86 NY2d 865; *Abrams v Donati,* 66 NY2d 951; *Barrett v Toroyan,* 28 AD3d 331; *Sloan v Clark,* 18 NY2d 570; *Broome v ML Media Opportunity Partners,* 273 AD2d 63; *Zuckerman v City of New York,* 49 NY2d 557; *Blank v Schafrann,* 129 AD2d 830, 70 NY2d 887; *Stark v Goldberg,* 297 AD2d 203; *Ramos v Howard Indus., Inc.,* 10 NY3d 218; *Franchini v Palmieri,* 307 AD2d 1056, 1 NY3d 536.) II. *Hotaling v Leach & Co.* (247 NY 84 [1928]) does not support plaintiffs' appeal. (*Bernstein v Kelso & Co.,* 231 AD2d 314; *Kaufmann v Delafield,* 224 App Div 29; *Kono v Roeth,* 237 App Div 252; *Abrams v Donati,* 66 NY2d 951; *Primavera Familienstifung v Askin,* 130 F Supp 2d 450; *Broome v ML Media Opportunity Partners,* 273 AD2d 63; *General Rubber Co. v Benedict,* 215 NY 18; *Solutia Inc. v FMC Corp.,* 385 F Supp 2d 324; *Reno v Bull,* 226 NY 546.) III. Public policy does not permit plaintiffs to pursue damages that duplicate the partnership's damages. (*Hartford Acc. & Indem. Co. v Chartrand,* 239 NY 36; *Haire v Bonelli,* 57 AD3d 1354; *Scribner v Summers,* 84 F3d 554; *Phelan v Local 305 of United Assn. of Journeymen, & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Can.,* 973 F2d 1050; *Zarcone v Perry,* 78 AD2d 70; *Hart v General Motors Corp.,* 129 AD2d 179; *Sloan v Clark,* 18 NY2d 570; *Mitchell v New York Hosp.,* 61 NY2d 208; *Security Pac. Bus. Credit v Peat Marwick Main & Co.,* 79 NY2d 695; *Broome v ML Media Opportunity Partners,* 273 AD2d 63.)

### OPINION OF THE COURT

PIGOTT, J.

In these actions, plaintiffs, former limited partners of Lipper Convertibles, LP, assert direct claims of fraud against PricewaterhouseCoopers, LLP (PwC), the auditor of Lipper Convertibles' annual financial statements for the years 1995 through 2000. Plaintiffs claim that PwC fraudulently declared the partnership's financial statements to be accurate and prepared in conformity with generally accepted accounting principles (GAAP), when in fact they were not. Plaintiffs argue that they were induced by PwC's fraud into making

their initial investments in the partnership. But because PwC showed that the damages plaintiffs claimed to have suffered were the result of the conduct of the fund and not a direct diminution of plaintiffs' initial investments, the order of the Appellate Division granting PwC's motion for summary judgment dismissing the fraud cause of action should be affirmed.

## Factual Background

Lipper Convertibles (the Fund) was a private investment hedge fund managed by Lipper Holdings, LLC, a Delaware limited liability company, for the benefit of limited partners who were passive investors in the Fund. In general, pursuant to a partnership agreement, limited partners of the Fund held interests equal to their initial investment amounts plus (or minus) any gains (or losses) resulting from the partnership's investment activities. For its duties as manager, Lipper Holdings received 20% of the net profits purportedly received by the Fund. During the relevant time period, PwC was the Fund's auditor, reviewing the financial statements that detailed the Fund's performance and the value of each partner's interest.

Between 1997 and 2001, plaintiffs collectively invested more than $120 million to purchase limited partnership interests. Plaintiffs claim that they made these investments in justifiable reliance upon the representations about the Fund's operations and performance in the financial statements audited by PwC. The financial statements and reports, which showed consistent growth in the value of the Fund's portfolio, however, fraudulently overstated the Fund's assets by many millions of dollars.

In 2002, the fraud was publicly disclosed after the Fund's portfolio manager unexpectedly resigned. Lipper Holdings, as general partner, conducted a review of its portfolio and discovered that its manager had used an improper method for valuing the Fund's securities, materially overstating the value of the holdings. The former manager was later investigated by the Securities and Exchange Commission (SEC) and criminally prosecuted, resulting in a guilty plea to securities fraud. PwC's accountant in charge of conducting the audits of the financial statements was ultimately suspended by the SEC for his failings. The SEC found that the representations by PwC—that it had conducted audits that complied with GAAP—were materially false and that its approval of the certification of the Fund's financial statements was "highly unreasonable."

The result of the improper valuation methods was that Lipper Convertibles had, over the years, reported increasingly

inflated assets, capital and profits. In February 2002, after completing a reevaluation, Lipper Convertibles announced to its limited partners, including plaintiffs, that it had reduced its assessment of its net equity value by approximately $400 million, a 40% "write down" in its previously reported capital. This resulted in the withdrawals of many limited partners' investments, and the decision that Lipper Convertibles be liquidated. A proceeding to dissolve the Fund was commenced. The general partner retained an accounting firm, BDO Seidman, to determine a methodology for the distribution of the assets. The plan developed by BDO Seidman involved revaluing the assets of the Fund, on a month-by-month retrospective basis, and then recalculating the existing limited partners' percentage interests for the purpose of the distribution.

In October 2002, a formal liquidation proceeding was commenced to allow the general partner to distribute the assets to the limited partners in accordance with the BDO Seidman plan. After some litigation not relevant here, the plan was implemented and plaintiffs collectively recovered about $111.5 million.

In the spring of 2003, a Trustee was appointed, charged with, among other things, investigating and bringing claims against the former Fund managers, and any other culpable parties, on behalf of the limited partners who lost money as a result of the Fund's collapse. In July 2004, the Trustee commenced an action against PwC for damages allegedly caused to the Fund by PwC's improper audits. The Trustee alleged, among other things, that PwC was aware of the misstatements in the financial reports, but failed to bring them to the attention of the Fund's management, instead falsely representing that the financial statements were prepared in accordance with GAAP. Based on these allegations, the Trustee asserted causes of action for accountant malpractice, fraud, breach of fiduciary duty and breach of contract.*

## The Instant Actions

At the end of 2003, plaintiffs commenced these three separate actions against PwC. Each action asserted claims of fraud, aiding and abetting fraud, aiding and abetting breach of fiduciary duty, negligent misrepresentation, and negligence. For their fraud cause of action, plaintiffs allege that PwC induced them to invest in the Fund through the year-end statements, as well

---

* The Trustee settled with PwC in January 2010.

as monthly reports, without having employed the proper auditing methods necessary to ensure that the financial statements were accurate.

PwC moved, pursuant to CPLR 3211, to dismiss the fraud claim, arguing that plaintiffs had pleaded no injury distinct from the injury attributed to the Fund as a whole, which was the subject of the Trustee action that had been brought on behalf of, and would inure to the benefit of, all injured limited partners. PwC argued that plaintiffs' action should be dismissed because it alleged only a derivative injury or, alternatively, should be stayed pending resolution of the Trustee's action. Plaintiffs responded by asserting that their claim was distinct from the Trustee's claim because they were seeking damages predicated on fraud in the inducement—that they had been fraudulently induced to rely on PwC's audits when they made their initial investment in the Fund and thus sustained injury on the very day of their purchase. They contrasted this injury with the damages the Trustee sought to recover, which included recovery for excessive management and incentive fees the Fund had paid as a result of the overvaluation.

Supreme Court denied, in part, PwC's motion to dismiss. As relevant to this appeal, the court held that "to the extent that Plaintiffs assert direct claims, such as fraud in the inducement of their initial investment in the Partnership, they are not derivative and the court therefore declines to dismiss them." (*Jones v PricewaterhouseCoopers LLP*, 2004 NY Slip Op 51789[U], *4.)

Discovery ensued. Each party presented an expert to address the extent of any distinct, nonderivative injury plaintiffs may have suffered. At the conclusion of discovery, PwC moved for summary judgment asserting, once again, that plaintiffs could not come forward with proof that they suffered an injury distinct from that suffered by the Fund, which damages were being pursued by the Trustee on behalf of plaintiffs and all other limited partners. In support of the motion, PwC submitted the affidavit of an expert economist who opined that all of the damages articulated by plaintiffs were derivative as they consisted only of plaintiffs' pro rata share, as limited partners, of the Fund's losses arising from (1) net income loss, (2) overpayments of general partner fees, and (3) overpayments of capital to withdrawn limited partners.

In opposition, plaintiffs submitted the affidavit of their own accounting expert, who argued that because the Fund had been

overvalued at the time of the plaintiffs' investment, the damages plaintiffs suffered should be calculated as "the difference between their initial investments and the amount they actually recovered through withdrawals or distributions from the Fund, plus an appropriate amount of prejudgment interest." The expert concluded that the total shortfall among all the plaintiffs was approximately $35 million and claimed that plaintiffs would recover far less from the Fund in the then-pending liquidation proceeding.

Supreme Court granted PwC's motion for summary judgment finding that plaintiffs failed to present evidence of a direct injury, noting that plaintiffs had shown only derivative injuries. The court held that PwC had made a prima facie showing that plaintiffs' claims "all state derivative claims that all limited partners share equally proportionate with their investments in the Funds . . . [and] none of the [plaintiffs'] claimed direct injuries are independent of any alleged injury to the Partnerships." (2007 NY Slip Op 33619[U], *5.) Addressing plaintiffs' evidence, the court held that plaintiffs failed to carry their burden to respond to PwC's prima facie showing with competent evidence:

> "[D]iscovery is now closed and plaintiffs fail to produce any evidence to support their claim that they suffered a direct injury at the time of their investments that is distinct from the injury to the Partnerships . . . In short, the only loss plaintiffs can demonstrate is the diminution in value of their investment in the Partnerships, stemming from the Partnerships' overpayments and trading losses. Thus, the nature of the injury is derivative. As plaintiffs fail to rebut PWC's prima facie showing, the court is constrained to grant PWC's motions for summary judgment dismissing the complaints." (*Id.* at *6-7.)

The Appellate Division affirmed (57 AD3d 411 [2008]). This Court granted plaintiffs leave to appeal (13 NY3d 707 [2009]) and we now affirm.

## Analysis

Neither party disputes that plaintiffs, as limited partners of a partnership, may assert a direct claim of fraud in the inducement. Indeed, PwC concedes that an individual investor may have a direct claim for an investment made in reliance on a

fraud. Thus, for purposes of this appeal, we assume, without deciding, that plaintiffs properly alleged such a cause of action against PwC. The dispute on this appeal then is whether plaintiffs came forward with proof to refute PwC's showing that all the damages claimed under that cause of action were plaintiffs' share of partnership losses and thus derivative in nature.

In a fraud action, a plaintiff may recover only the actual pecuniary loss sustained as a direct result of the wrong (*Reno v Bull*, 226 NY 546 [1919]). Under this rule, the actual loss sustained as a direct result of fraud that induces an investment is the "difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain" (*Sager v Friedman*, 270 NY 472, 481 [1936]). The damages are to compensate plaintiffs for what they lost because of the fraud, not for what they might have gained (*see Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421 [1996]).

Plaintiffs rely on an exception to the fraud damages rule recognized by this Court in *Hotaling v Leach & Co.* (247 NY 84 [1928]). In that case, the plaintiff was fraudulently induced into purchasing a bond for a certain sum of money (*id.* at 85-86). The trial court measured the damages by deducting from the price paid, plus interest from the date of payment, the value of the bond at the time of its sale (*id.* at 87). This Court held that this was the proper measure of damages, as plaintiff was entitled to recover from the defendants the loss proximately resulting from the fraud that induced the investment (*id.* at 87, 92-93). The Court recognized, however, that this measure of damages was an exception to the general rule that "the actual pecuniary loss sustained as a direct result of fraud which induces a purchase . . . is the difference between the amount paid and the value of the article received" (*id.* at 87-88).

*Hotaling*, however, differs from this case in significant ways. First, the Court in *Hotaling* rejected a measure of damages based on the market value of the bond when the plaintiff purchased it, explaining that such value could not be determined and would have left the plaintiff without any remedy (*id.* at 89-90). Here, in contrast, plaintiffs could have come forward with portfolio valuations showing the amount of the claimed overvaluation of the portfolio on the day of their respective investments. Indeed, plaintiffs' expert acknowledged that such an analysis could be undertaken, but he failed to do one, and

BDO Seidman undertook a similar calculation in relation to the liquidation proceeding. Further, there was no overlapping derivative claim in *Hotaling* that would inure to the plaintiff's benefit. Here, the Trustee has prosecuted claims seeking the very same categories of damages allegedly suffered by plaintiffs. The presence of the overlapping claims requires plaintiffs to come forward with direct, distinct date-of-investment injuries.

Plaintiffs failed to meet their burden. The only injury they seek to establish is the diminution in value of their limited partnership interests at liquidation. However, that diminution is attributable to their pro rata share of the partnership's losses after the date of their investments, and they experienced those losses in their capacities as limited partners in common with all other limited partners. Plaintiffs cannot recover their pro rata share of the partnership injury and also recover that same injury under the direct fraud action. Thus, PwC was entitled to summary judgment dismissing the fraud cause of action.

Accordingly, the order of the Appellate Division should be affirmed with costs.

READ, J. (dissenting). The issue on defendant PricewaterhouseCoopers, LLP's (PwC) motion for summary judgment is whether plaintiffs, limited partners of Lipper Convertibles, LP (the fund), suffered any injuries as a result of PwC's allegedly fraudulently inducing them to invest in the fund which were not derivative in nature—not whether plaintiffs have advanced the proper measure of damages for such direct injuries. Here, there is evidence in the record that plaintiffs suffered date-of-investment injuries unique to each of them. PwC has not shown otherwise, as it must to succeed in a motion for summary judgment to dismiss the complaint; all PwC attempted to demonstrate is that plaintiffs' proposed method of calculating damages for their date-of-investment injuries, based on plaintiffs' interpretation of our decision in *Hotaling v Leach & Co.* (247 NY 84 [1928]), encompasses after-date-of-investment losses for which the trustee in liquidation has sought recompense on behalf of the fund. Accordingly, I respectfully dissent.

First, the record is replete with evidence that the fund's investment assets were spuriously inflated during the years when plaintiffs made individual cash contributions. This overvaluation was, of course, the fraud at the heart of all the litigation that followed upon the heels of its discovery in early 2002. Indeed, the fund's principal trader ultimately pleaded

guilty to criminal violations of federal securities laws for causing the value of the fund's assets to be overstated by hundreds of millions of dollars.

Second, there is no dispute that each plaintiff's initial percentage ownership interest in the fund was calculated by taking the value of that plaintiff's cash contribution and dividing it by the total *stated* value of all existing limited partners' capital accounts. As a matter of mathematics, since the stated value of the capital accounts of the existing limited partners was artificially inflated—and, again, it is undisputed that this was generally the case throughout the relevant time period—the relative percentage ownership interest of each plaintiff's investment in the fund was necessarily understated on the day it was made. Or, as plaintiffs' expert put it, because of the overvaluation, plaintiffs

> " 'overpaid' for their limited partnership interests in the Fund at the time of their investment. On the date of purchase, each acquired a limited partnership interest that represented a smaller percentage of the total partners' capital in the Fund than would have been expected had the Fund's then-reported market value and value of partners' capital been stated accurately."

In light of this evidence, to succeed in a motion for summary judgment PwC would have to have shown that the values contemporaneously reported in the fund's records were, in fact, appropriate at the specific point in time when these plaintiffs (or at least some of them) made cash contributions. PwC did not do this; therefore, PwC did not fulfill its initial burden to establish that plaintiffs could not prove unique date-of-investment injuries.

The parties concede that it is feasible for an expert to determine the true (or at least a more accurate) value for the fund's investment assets at any moment in time from the beginning of 1996 through the end of 2001. Indeed, the majority, in common with PwC, faults plaintiffs for neglecting to "show[ ] the amount of the claimed overvaluation of the portfolio on the day of their respective investments" (majority op at 271). I agree that plaintiffs would have to do this at trial because, as the majority implicitly holds by distinguishing *Hotaling*, the proper measure of damages in this case for fraudulent inducement, if proven, would be the difference between what plaintiffs paid for

their partnership interest when they invested and the value of what they received at that time in exchange. I cannot agree, however, that, in order to avoid summary judgment, plaintiffs had to produce evidence of the *amount* of their damages for direct injuries whose existence PwC did not refute. As plaintiffs pointed out, even if the Court rejects *Hotaling*'s measure of damages under these facts, as it has, "[s]ummary judgment does not require conclusive proof or quantification; it requires only sufficient evidence to create a genuine issue." Here, absent the kind of showing that PwC did not make, there is, at a minimum, a genuine issue as to whether plaintiffs suffered date-of-investment injuries.

Judges CIPARICK, GRAFFEO, SMITH and JONES concur with Judge PIGOTT; Judge READ dissents in a separate opinion; Chief Judge LIPPMAN taking no part.

Order affirmed, with costs.