**Larry JOSEPH and Peter Savitz Partners, Plaintiff,**

v.

**MOBILEYE, N.V., Defendant,**

**16 Civ. 3554 (VM)**

United States District Court, S.D. New York.

Signed December 13, 2016

Joshua P. Paul, Kristen Ashley Mogavero, Collen IP, Ossining, NY, for Plaintiff.

Michael F. Sarney, Moritt Hock & Hamroff LLP, New York, NY, for Defendant.

## DECISION AND ORDER

VICTOR MARRERO, United States District Judge.

Plaintiff Larry Joseph and Peter Savitz Partners ("LP Partners") brought this action against defendant Mobileye, N.V. ("Mobileye") alleging fraud, negligent misrepresentation and unjust enrichment. LP Partners argues that Mobileye's misstatements about its value and plans for an initial public offering ("IPO") induced LP Partners to sell its shares prior to the IPO for a fraction of their value. (See "Amended Complaint." Dkt. No. 14)

Following the parties' exchange of pre-motion correspondence, Mobileye now seeks leave to move to dismiss the Amended Complaint. The Court construes Mobileye's pre-motion letters as a motion to dismiss the Amended Complaint. ("Motion," Dkt. No. 15.) For the reasons discussed below, Mobileye's Motion is DENIED.

## I. BACKGROUND

### A. FACTUAL BACKGROUND [1]

In November 2003, LP Partners purchased 15,385 shares of Mobileye, then a private company incorporated in the Netherlands. In May 2013, Mobileye announced

---

1. The Court derives the factual summary below from the Amended Complaint (Dkt. No. 14) and the documents cited or relied upon for the facts pleaded therein. The Court accepts the facts in the pleadings as true for the purposes of ruling on a motion to dismiss. See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 180 (2d Cir. 2008); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). Except where specifically quoted, no further citation will be made to the documents mentioned above or the documents referred to therein.

a tender offer (the "Offer") in which Mobileye shareholders could sell their shares to Driving Momentum B.V. ("DM"),[2] which in turn would sell all the Mobileye shares to a group of outside investors. In the Offer, DM, which was formed for the purpose of making the Offer, sought to acquire up to 10,315,187 Mobileye shares, corresponding to approximately 24 percent of the company's outstanding stock, for $33,036 per share.

The Offer documents required shareholders selling their shares to acknowledge that they were giving up any future appreciation in the value of their shares. In agreeing to tender its shares pursuant to the Offer, LP Partners agreed that it understood that it would "forgo any future appreciation . . . in the value of the shares tendered, including if the Company were to complete an [IPO]" and that it was "not relying on any representations about the future business or financial projections of the Company in making its decision to sell." (Amended Complaint, Ex. 1 at 12.) The Offer documents stated that "as of the date of this [Offer], Mobileye has not decided whether to proceed with any IPO or Securities Listing." (Id. at ii, 12.)

Upon learning of the Offer, Larry Joseph ("Joseph"), a general partner of LP Partners, contacted Mobileye, which set up a telephone conference with Mobileye's CFO, Ofer Maharshak ("Maharshak"), for May 23, 2013. Joseph asked Maharshak about Mobileye's valuation and its plans for an IPO or other "liquidity event." Maharshak told Joseph that Mobileye was then valued at $1.6 billion, but that in six years it "should be valued at $3 billion," at which time Mobileye would evaluate another round of financing or an IPO. (Amended Complaint ¶ 33.) Maharshak "made it

clear" that an IPO was not then being considered or contemplated by Mobileye, and that the upside potential for existing shareholders, like LP Partners, was extremely limited for the next six years or more. (Id.) After the telephone conference, Joseph sent an email to Peter Savitz, his partner in LP Partners, summarizing the call with Maharshak and stating Joseph's view that "we should sell. We have a great return and I don't want to wait another six years." (Id., Ex. 2 at 1.)

In reliance on Maharshak's representations, LP Partners decided to sell its Mobileye shares pursuant to the Offer, which expired on July 29, 2013. On July 19, 2013, LP Partners completed the sale of all its Mobileye shares for a total of $508,258.86. Two of Mobileye's founders, CEO Ziv Aviram ("Aviram") and Amnon Shashua ("Shashua"), agreed to tender up to 16 percent and 20 percent of their holdings, respectively, pursuant to the offer.

After the Offer was announced, newspaper articles characterized the Offer as a step by Mobileye toward an eventual IPO. On July 7, 2013, Bloomberg News quoted Aviram as stating that the Offer "allowed early investors to exit and brought in more prominent stakeholders who can help the company move toward an IPO." (Amended Complaint ¶ 45.) That article reported that Mobileye, through the Offer, "added five investors, including U.S. global asset managers and a Chinese firm, in a $400 million sale of equity that is a step toward an initial public offering." (Id.) A New York Times article published the same day stated that the Offer "comes ahead of what [Aviram] said was an expected initial public offering in perhaps a year and a half." (Id.)

---

2. DM was wholly owned by Vivian Fransman, a principal of Mobileye and sole member of its Management Board.

In March 2014, ten months after the Offer, Mobileye announced an IPO whereby Mobileye would become listed on the New York Stock Exchange. The IPO, in which Mobileye issued 8,325,000 new ordinary shares for net proceeds of $197.4 million, closed on August 6, 2014. The IPO valued Mobileye at $5.31 billion at the beginning of the first day of trading and at $7.97 billion at the close of the first day of trading.

On March 15, 2015, Mobileye closed a secondary offering of 19,696,050 ordinary shares at a price of $41.75 per share. The secondary offering was by shareholders who had acquired their shares prior to Mobileye's IPO, and Mobileye did not receive any proceeds from the secondary offering.

On December 4, 2014, LP Partners sent a demand letter to Mobileye. After Mobileye rejected LP Partners' demand, in May 2016, LP Partners brought an action in New York Supreme Court, and Mobileye removed the case to this court. (See "Notice of Removal," Dkt. No. 1.) After the parties exchanged pre-motion letters regarding Mobileye's proposed motion to dismiss (see Dkt. No. 15, Exs. A–D), LP Partners on August 2, 2016 filed the Amended Complaint. The parties then exchanged additional pre-motion letters regarding Mobileye's proposed motion to dismiss the Amended Complaint (See Dkt. No. 15, Exs. E, F.)

## B. MOBILEYE'S PROPOSED MOTION TO DISMISS

By letter dated September 20, 2016, Mobileye renewed its request for leave to file a motion to dismiss LP Partners' claims, attaching the parties' earlier pre-motion correspondence. (See Dkt. No. 15.)

### 1. Fraud and Negligent Misrepresentation

Mobileye argues that the Amended Complaint fails to state a claim for fraud or negligent misrepresentation. First, Mobileye argues that the Amended Complaint fails to allege a misstatement. Mobileye contends that the alleged misstatements about a possible future IPO cannot be a basis for a fraud claim because the Amended Complaint fails to allege concrete facts showing that Mobileye did not believe its statements. Mobileye argues that the news reports cited in the Amended Complaint fail to show anything regarding Mobileye's own knowledge or intentions at the time of the Offer. Even if the cited newspaper articles could be relied upon, Mobileye argues that there are other articles that precede the Offer that state that Mobileye "had plans to go public in another year or two." (Dkt. No. 15 at 3 n.5.)

Second, Mobileye argues that the Amended Complaint fails to allege facts raising a strong inference of fraudulent intent, as required by Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)"). Specifically, Mobileye argues that the Amended Complaint fails to allege that Mobileye knew the misstatements were false or that Mobileye or its senior executives benefited from the alleged misstatements. Mobileye contends that if it knew that the Offer undervalued the Company, it "defies economic reason" for Aviram and Shashua to tender their shares. Moreover, Mobileye argues, the allegation that Mobileye needed the Offer to set up a successful IPO and induced LP Partners to tender its shares to minimize the number of shares sold by insiders makes no sense because there was no minimum number of shares to be tendered—only a maximum. Whatever Aviram's and Shashua's motivation for selling their shares, there was no reason for them (or for Mobileye, which

issued 900,000 new shares as part of the offer) to sell their shares for less than they were worth.

Third, Mobileye argues that the Amended Complaint fails to establish that LP Partners justifiably relied on any supposed misstatement because (1) LP Partners explicitly disclaimed any reliance by tendering its shares; (2) the Offer gave the new investors the right to try to force Mobileye to conduct an IPO if it had not done so within 18 months, making it unreasonable for LP Partners to rely on any oral statements to the contrary.

Fourth, Mobileye argues that the Amended Complaint fails to allege proximate causation. Mobileye argues that LP Partners' damages would be the difference between what LP Partners received for its shares and their value at the time of the Offer. Although the Amended Complaint alleges that the shares sold for more in the IPO, Mobileye argues that LP Partners fails to plead any facts suggesting that the Offer was for a price that was less than the true value of Mobileye stock at the time of the Offer, and that the Amended Complaint therefore fails to allege proximate causation.

### 2. Unjust Enrichment

Mobileye argues that the Amended Complaint fails to state a claim for unjust enrichment because it fails to allege that Mobileye or DM received anything of value. Specifically, Mobileye contends that it was not enriched because LP Partners sold its shares to DM, not to Mobileye, and DM then sold the shares to outside investors at no profit to DM or to Mobileye.

### C. LP PARTNERS' RESPONSE

#### 1. Fraudulent and Negligent Misrepresentation

By letter dated August 26, 2016, LP Partners disputes Mobileye's arguments.

(Dkt. No. 15, Ex. F.) First, LP Partners argues that the allegations in the Amended Complaint that Mobileye misrepresented its plans for an IPO was a misstatement of current fact, not an opinion regarding its future plans. LP Partners argues that the Amended Complaint alleges that an IPO was already underway at the time of the Offer and that Mobileye had a then-present intention to go public in the very near future. LP Partners further argues that the Amended Complaint pleads concrete facts showing that Mobileye knew that its misrepresentations were false when it made them, including that: (1) the IPO could not have been conceived, initiated and completed in the time between the Offer and the IPO; (2) Mobileye was already beginning the IPO process; and (3) news articles, including quotes by Aviram, reported that the purposes of the Offer was to facilitate the IPO.

Second, LP Partners argues that the Amended Complaint sufficiently alleges reasonable reliance. LP Partners argues that it was reasonable for it to rely on Maharshak's statements because he was one of three people specifically charged in the Offer documents with responding to shareholder inquiries and because the misrepresented facts were within Mobileye's exclusive knowledge and control.

Third, LP Partners argues that the Amended Complaint alleges proximate causation. LP Partners maintains that the Amended Complaint alleges that: (1) LP Partners would not have sold its shares pursuant to the Offer but for Mobileye's misrepresentations; (2) had LP Partners retained its shares it would have received the IPO price—approximately five times the Offer price; and (3) the price LP Partners received was less than the true value of the shares at the time of the Offer. LP Partners also argues that the

cases cited by Mobileye are inapposite because they concerned publicly traded stocks, the value of which could have been affected by innumerable factors, meaning that the misrepresentation may not have caused the loss. Here, LP Partners argues, there is no intervening cause and no speculation as to what caused its economic loss.

Fourth, LP Partners argues that the Amended Complaint alleges fraudulent intent. LP Partners contends that because the purpose of the misrepresentation was to induce LP Partners to sell its shares to facilitate the IPO, and the purpose of the IPO was to raise money (which it did), the Amended Complaint alleges that Mobileye realized a "concrete benefit" as a result of the alleged fraud. LP Partners also contends that, although some insiders sold shares in the Offer, because Mobileye needed to issue approximately 24 percent of its outstanding stock to institutional investors who would take Mobileye public, the more shares that outside investors like LP Partners sold pursuant to the Offer, the fewer shares the insiders would have to sell to ensure that sufficient shares were available for sale.

### 2. Unjust Enrichment

LP Partners argues that because the IPO raised hundreds of millions of dollars for Mobileye, whose shares, including those held by its executives, quadrupled in value, both Mobileye and its executives were enriched as a result of the Offer. LP Partners further argues that the enrichment took place at LP Partners' expense because Mobileye induced LP Partners to sell its shares at approximately 20 percent of the IPO price by making misrepresentations to LP Partners.

## II. LEGAL STANDARD

Because these "state law claims are brought under the Court's diversity juris-diction, federal pleading standards and New York's contract and tort laws apply." LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC, 10 F.Supp.3d 504, 508 (S.D.N.Y. 2014) (modifications omitted).

■ Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint should be dismissed if the plaintiff has not offered sufficient factual allegations that render the claim facially plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The complaint should not be dismissed if the factual allegations "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The pleadings must include more than "a formulaic recitation of the elements of a cause of action," Twombly, 550 U.S. at 555, 127 S.Ct. 1955; it must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.

■ The role of a court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F.Supp.2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks omitted). A court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). Even so, a court should not accept as true any "legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678–79, 129 S.Ct. 1937.

■ Rule 9 (b) of the Federal Rules of Civil Procedure ("Rule 9(b)") requires that a party "alleging fraud or mistake … must state with particularity the circum-

stances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy this Rule, a complaint alleging fraud must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 25 (2d Cir. 2016) (internal quotation marks omitted).

■ "Despite the generally rigid requirement that fraud be pleaded with particularity, allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge." Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990). "Where pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard." Id.

■ Rule 9(b) states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This "relaxation of Rule 9(b)'s specificity requirement for scienter 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.' " Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991)). Thus, although Rule 9(b) permits that intent be alleged generally, "plaintiffs must assert facts that plausibly support the inference of fraud." Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC, 797 F.3d 160, 170 (2d Cir. 2015) (quoting Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 360 (2d Cir. 2013)) (internal quotations omitted). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Shields v. Citytrust Bancorp., Inc., 25 F.3d at 1128.

■ "Whether a given intent existed is generally a question of fact, appropriate for resolution by the trier of fact." Press v. Chem. Inv. Servs. Corp., 166 F.3d 529, 538 (2d Cir. 1999) (internal citation omitted). Similarly, the inquiry into the reasonableness of reliance "is 'always nettlesome because it is so fact-intensive' and 'ordinarily a question of fact to be determined at trial.' " In re Eugenia VI Venture Holdings, Ltd. Litig., 649 F.Supp.2d 105, 119 (S.D.N.Y. 2008), aff'd sub nom. Eugenia VI Venture Holdings, Ltd. v. Glaser, 370 Fed. Appx. 197 (2d Cir. 2010) (quoting Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997) and Computech Int'l, Inc. v. Compaq Computer Corp., No. 02 CIV 2628, 2004 WL 1126320, at *9 (S.D.N.Y. May 21, 2004)).

## III. DISCUSSION

### A. COMMON LAW FRAUD

#### 1. Applicable Law

■ To prove common law fraud under New York law, a plaintiff must show: (1) a material false statement or omission; (2) made with knowledge of its falsity; (3) with an intent to defraud; and (4) reasonable reliance on the part of the plaintiff; (5) that causes damage to the plaintiff. See Haggerty v. Ciarelli & Dempsey, 374 Fed. Appx. 92, 94 (2d Cir. 2010) (citing Eurycleia Partners, LP v. Seward & Kissel, LLP, 12 N.Y.3d 553, 883 N.Y.S.2d 147, 910 N.E.2d 976 (2009)). Although causation is not always explicitly included as an element of fraud, "New York law recognizes that 'a plaintiff may recover only the actual pecuniary loss sustained as a direct result

of the wrong.'" LBBW Luxemburg, 10 F.Supp.3d at 514–15 (quoting Continental Cas. Co. v. PricewaterhouseCoopers, LLP, 15 N.Y.3d 264, 271, 907 N.Y.S.2d 139, 933 N.E.2d 738 (2010)).

### 2. Application

#### a. Material Misrepresentation

■ The Amended Complaint's allegations that Mobileye misrepresented its plans for an IPO, which the Court must accept as true in evaluating a motion to dismiss, satisfies the pleading requirements of Rule 9(b). The Amended Complaint alleges that Maharshak, the CFO of Mobileye, told Joseph, a general partner of LP Partners, during a May 23, 2013 telephone call, that Mobileye was not currently considering an IPO, but that it "would consider another round of financing or an IPO" in six years. (Amended Complaint ¶ 33.) The Amended Complaint further alleges that, based on statements made by Aviram to the press asserting that "at the time Mobileye made the statements it did to [LP Partners], Mobileye had a then-present intention to proceed promptly to an IPO, an intention it concealed from Plaintiff and revealed to the press only after the Offer closed." (Id. ¶ 47.) Whether or not Mobileye already had plans for an IPO at that time is an issue for the trier of fact to determine at a later stage of these proceedings. To survive Mobileye's Motion, it is sufficient that the Amended Complaint alleges that Mobileye had such plans in place by the time of the Offer, which it does. (See id. ¶¶ 44, 47.)

#### b. Knowledge of Falsity and Fraudulent Intent

■ The Amended Complaint satisfies Rule 9(b) because it alleges that the purpose of the alleged fraud was to facilitate a future IPO for Mobileye, something with significant financial upside for both Mobileye and its shareholders. The Amended Complaint alleges that "Defendant and Maharshak knew or should have known, and should have disclosed to Plaintiff at the time of Joseph's telephone conversation with Maharshak, that Mobileye had in fact formed a firm intention to go public in the very near future," and that the Offer was part of an underlying effort to induce current shareholders to sell in order to bring on "more prominent stakeholders" who could help the company move toward an IPO within a year and a half. (Amended Complaint ¶¶ 43, 45.)

Mobileye argues that the Amended Complaint fails to allege facts that support an inference of fraud because it would have made no sense for Mobileye or its executives to sell their shares for a price that they knew undervalued the company when there was no minimum number of shares required to be sold in the Offer. Although an alleged fraudulent scheme that defies economic reason does not yield a strong inference of fraudulent intent, see Atl. Gypsum Co. v. Lloyds Int'l Corp., 753 F.Supp. 505, 514 (S.D.N.Y. 1990), the Court cannot find that Mobileye's alleged fraud would have no economic rationale. There is no dispute that the IPO was an important step in Mobileye's development that raised substantial amounts of money for Mobileye and enriched its existing shareholders. The Amended Complaint alleges that Mobileye sought, through the Offer, to acquire up to 24 percent of the outstanding shares and sell those shares to institutional investors in order to facilitate the IPO.

At this stage, it is sufficient that LP Partners has alleged plausible facts that constitute circumstantial evidence that Mobileye consciously misrepresented its intentions in connection with the Offer and subsequent IPO. The Amended Complaint alleges that Maharshak told Joseph that

the Mobileye did not intend to proceed with an IPO in the near future, while Avirara shortly thereafter touted the Offer as having "brought in more prominent stakeholders who can help the company move toward an IPO." (Amended Complaint ¶ 45.) Those conflicting statements constitute circumstantial evidence that Maharshak was being intentionally untruthful when speaking to Joseph about Mobileye's plans and that Mobileye had motive to misrepresent so as to encourage existing shareholders to tender their shares pursuant to the Offer. The Amended Complaint therefore sufficiently alleges facts that raise a sufficiently strong inference of fraudulent intent.

### c. Reasonable Reliance

 LP Partners alleges that, not only did it act in reliance on Maharshak's statements, but that it also expressly sought advice from Mobileye and its executives for this very reason. Maharshak was specifically listed in the Offer as an individual to contact for further information. Reliance on his statements is far from unjustified; rather, it is to be expected.

Mobileye's assertion that a plaintiff "cannot rely on misleading oral statements . . . when the offering materials contradict the oral assertions" is misplaced. (Dkt. No. 15 at 4.) First, that proposition concerns an unsuitability claim under Section 10(b) of the Exchange Act of 1934. See Dodds v. Cigna Sec., Inc., 12 F.3d 346, 351 (2d Cir. 1993). In the context of such a claim, a plaintiff's "reliance on the oral statements . . . as to the low risk, conservative character of the investment is not justified as a matter of law [where] the alleged oral statements are contradicted by the offering materials." Brown v. E.F. Hutton Grp., Inc., 991 F.2d 1020, 1031 (2d Cir. 1993). In the context of a misrepresentation claim, "[t]he tension between the telephone conversation and the [written agreement] can-

not be resolved on the pleadings." Suez Equity Investors, L.P. v. Toronto–Dominion Bank, 250 F.3d 87, 104 (2d Cir. 2001) (discussing a negligent misrepresentation claim).

Moreover, LP Partners alleges that Maharshak's statements were consistent with the Offer documentation—they both stated that there was no then—existing plans for an IPO—but misrepresented the actual facts, which were that Mobileye and its executives had already decided to take Mobileye public in the near future and proceeded with the Offer as "part of Mobileye's run-up to an already expected IPO." (Amended Complaint ¶¶ 33–34, 36, 44.) Whether those allegations are true or not cannot be appropriately resolved on a motion to dismiss. Where, as here, "the reasonableness of reliance depends upon factual determinations that are not plain from a review of the complaint and its attachments or that remain in dispute after discovery, the fraud claim should not be summarily dismissed on that ground." In re Eugenia, 649 F.Supp.2d at 119.

### d. Causation

 The Amended Complaint alleges that: (1) LP Partners wanted to retain its shares if Mobileye was close to an IPO; (2) LP Partners would not have sold its shares pursuant to the Offer but for Maharshak's misrepresentations; and (3) because it sold its shares pursuant to the Offer, Mobile did not receive a fair price for them, which would have incorporated the potential upside of an impending IPO. (See Amended Complaint ¶¶ 2, 7, 29, 50.) These allegations are sufficient to survive Mobileye's Motion.

## B. NEGLIGENT REPRESENTATION

### 1. Applicable Law

 " 'Liability for negligent misrepresentation has been imposed only on

those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified.'" LBBW Luxemburg S.A., 10 F.Supp.3d at 525–26 (quoting Kimmell v. Schaefer, 89 N.Y.2d 257, 652 N.Y.S.2d 715, 675 N.E.2d 450, 454 (1996)). "To state a claim for negligent misrepresentation under New York law, a plaintiff must allege that (1) the parties stood in some special relationship imposing a duty of care on the defendant to render accurate information, (2) the defendant negligently provided incorrect information, and (3) the plaintiff reasonably relied upon the information given." Saltz v. First Frontier, LP, 782 F.Supp.2d 61, 82 (S.D.N.Y. 2010), aff'd sub nom. 485 Fed.Appx. 461 (2d Cir. 2012).

New York law imposes a three-part test to determine whether a special relationship existed between the parties:

> whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose.

Kimmell, 652 N.Y.S.2d 715, 675 N.E.2d at 454. "Strong allegations on the first and third factors can overcome weak pleading of the second, somewhat circular factor." LBBW Luxemburg, 10 F.Supp.3d at 526 (citing Suez Equity Investors, L.P. v. Toronto–Dominion Bank, 250 F.3d at 103).

### 2. Application

Here, the Amended Complaint adequately alleges facts that satisfy all three elements of a claim for negligent representation. The second and third elements have already been discussed above in the context of the fraud claim.

With respect to the first element—the existence of a special relationship—the Amended Complaint alleges facts that support each of the three inquiries. First, the Amended Complaint alleges that Mobileye had special knowledge of the facts surrounding the Offer and Mobileye's plans to go public. (See Dkt. No. 14 ¶ 75.) Second, although there may not have been a pre-existing relationship of trust between the parties, "a special relationship is more likely to exist if the misrepresented facts were peculiarly within the Defendant's knowledge," as was the case here. LBBW Luxemburg S.A., 10 F.Supp.3d at 526 (S.D.N.Y. 2014). Third, the Amended Complaint alleges that LP Partners was explicitly directed to speak to Maharshak regarding the Offer and that LP Partners told Maharshak that it wanted to hold its Mobileye shares and wait for an IPO or other liquidation event. (See Dkt. No. 14 ¶¶ 30, 77.)

These allegations are sufficient to survive a motion to dismiss. Indeed, "[w]hether the nature and caliber of the relationship between the parties is such that the injured party's reliance on a negligent misrepresentation is justified generally raises an issue of fact." Kimmell, 652 N.Y.S.2d 715, 675 N.E.2d at 454.

### C. UNJUST ENRICHMENT

With respect to LP Partners' claim for unjust enrichment, the Court finds that partial adjudication of some of the claims asserted against Mobileye would not facilitate resolution of the underlying dispute and thus would be an inefficient use of the Court's resources. The claim for unjust enrichment relies on the same facts as the claims for fraudulent and negligent misrepresentation. Dismissal of only one of those claims would therefore not narrow the scope of discovery or otherwise contribute to the efficient prosecution

and resolution of this litigation. LP Partners' unjust enrichment claim will therefore be allowed to proceed without prejudice to Mobileye's ability to raise it at a later stage of the proceedings.

## IV. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. No. 15) of defendant Mobileye, N.V. to dismiss the amended complaint of plaintiffs Larry Joseph and Peter Savitz Partners (Dkt. No. 14) is **DENIED**.

**SO ORDERED.**