22-1113-cv
*Keystone Foods Holding Limited, n/k/a Beef Holdings Limited v. Tyson Foods, Inc*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of May, two thousand twenty-three.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge,*
> REENA RAGGI,
> MARIA ARAÚJO KAHN,
> *Circuit Judges.*

---

KEYSTONE FOODS HOLDINGS LIMITED, N/K/A BEEF HOLDINGS LIMITED,

> *Plaintiff-Appellant,*

v.                                                                  22-1113-cv

TYSON FOODS, INC.,

> *Defendant-Appellee.*

---

For Plaintiff-Appellant:              WILLIAM B. ADAMS (Michael B. Carlinsky and Blair A. Adams, *on the brief*), Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY

For Defendant-Appellee:               JUSTIN N. KATTAN (Sandra D. Hauser, *on the brief*), Denton US LLP, New York, NY

Appeal from a judgment of the United States District Court for the Southern District of New York (Carter, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **AFFIRMED**.

Plaintiff-Appellant Keystone Foods Holdings Limited n/k/a Beef Holdings Limited ("Beef Holdings"), a subsidiary of Marfrig Global Foods S.A. ("Marfrig"), appeals from the April 21, 2022 judgment of the United States District Court for the Southern District of New York (Carter, *J.*), which, in relevant part, dismissed Beef Holdings's claims of promissory fraud and fraudulent inducement (counts VIII and IX, respectively) against Defendant-Appellee Tyson Foods, Inc. ("Tyson"). As relevant to this appeal, in July 2018, the parties entered into a preliminary agreement (the "Revised Proposal") pursuant to which Tyson agreed to negotiate in good faith a final agreement to acquire Beef Holdings's global poultry business, which operated as Keystone Foods Holdings Limited ("Keystone"), for $2.7 billion, less $200 million in "agreed allowances, with no further deductions." App'x 167. In return, Beef Holdings agreed to cease negotiations with other potential acquirers for a limited period, including a competing bidder (the "Other Bidder") who allegedly "expressed a desire to buy Keystone's U.S. operations," but not its overseas operations, "at a price between $1.6 billion and $1.75 billion." *Id.* at 21. But a final agreement consistent with the Revised Proposal's terms never materialized, allegedly because Tyson demanded a significant price cut at the last minute. Instead, on August 17, 2018, the parties executed a stock purchase agreement for Tyson to acquire Keystone for $2.37 million, minus certain allowances—$330 million less than the amount reflected in the Revised Proposal.

After the deal closed, Beef Holdings filed suit in the Supreme Court of the State of New York, asserting, as relevant here, that Tyson fraudulently entered the Revised Proposal with the

intention of ultimately demanding a lower price. Tyson removed Beef Holdings's action to federal district court and moved to compel arbitration of certain claims and to dismiss others, including the fraud claims. The district court granted the motion, holding, in relevant part, that Beef Holdings failed to plead adequate allegations of special damages to maintain its fraud claims under New York law. Beef Holdings appeals only the dismissal of the fraud claims. For the following reasons, we affirm the order and judgment below. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we reference here only as necessary to explain our decision.[1]

\* \* \*

Generally, under New York law, "allegations that [a] defendant entered into a contract while lacking the intent to perform it are insufficient to support [a fraud claim]." *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (1995). This flows from the notion that "a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) (internal quotation marks omitted). But "not every fraud claim is foreclosed in an action also involving a contract." *Id.* As this Court has recognized, one circumstance in which a plaintiff may pursue a fraud claim premised on a breach of contract is where the plaintiff "seek[s] special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996). "Special"—or, alternatively, "consequential"—damages seek to compensate a plaintiff for losses other than the value of the promised performance that are

---

[1] We review *de novo* a district court's dismissal under Rule 12(b)(6). *Cornelio v. Connecticut*, 32 F.4th 160, 168 (2d Cir. 2022). "We consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

incurred as a result of the defendant's breach. *Schonfeld v. Hilliard*, 218 F.3d 164, 175 (2d Cir. 2000). Thus, a "fraud claim [is] actionable" where "the injury alleged [is] the detriment actually suffered by plaintiff rather than the value of what [the] defendant promised." *Fort Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784, 793 (2d Cir. 1986) (internal quotation marks omitted).

"In an action to recover damages for fraud," damages are measured using the "out-of-pocket" rule, which captures "the actual pecuniary loss sustained as the direct result of the wrong." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996) (internal quotation marks and citations omitted). "Under this rule, the loss is computed by ascertaining the difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain." *Id.* (internal quotation marks omitted). This measure reflects the intention "to restore [] plaintiffs to the position they occupied before the commission of the fraud." *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 106 (2d Cir. 2014). As such, in measuring the loss, the plaintiff may account for "the costs incurred in preparation or in performance or in passing up other business opportunities." *Fort Howard Paper Co.*, 787 F.2d at 793 n.6 (alternations and internal citations omitted).

But in seeking to recover for a "pass[ed] up . . . business opportunit[y]," *id.*, "the loss of an alternative contractual bargain" that was "undeterminable and speculative" will not suffice. *Lama Holding Co.*, 88 N.Y.2d at 422 (quoting *Dress Shirt Sales, Inc. v. Hotel Martinique Assocs.*, 12 N.Y.2d 339, 344 (1963)). This is because special damages—unlike general damages—are only recoverable when "the extent of the loss is capable of proof with a reasonable certainty." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 109 (2d Cir. 2007). Thus, while the damages associated with a lost opportunity "need not be proven with mathematical

precision, they must be capable of measurement based upon known reliable factors without undue speculation." *Schonfeld*, 218 F.3d at 172 (internal quotation marks omitted).

Consistent with this rule, courts applying New York law have allowed plaintiffs to sustain fraud allegations based on lost opportunities in some circumstances but not in others. For example, in *Schonfeld*, this Court held that a plaintiff could pursue a fraud claim to recover the value of a supply agreement that the plaintiff was allegedly induced to abandon on the theory that its "market value" was sufficiently determinable so as not to be speculative. *See* 218 F.3d at 183. In contrast, in *Connaughton v. Chipotle Mexican Grill, Inc.*, the Court of Appeals of New York affirmed the dismissal of a plaintiff's fraud claim, holding that the mere allegation that the plaintiff had "stopped soliciting potential buyers" due to the defendants' alleged fraud was too speculative to demonstrate any out-of-pocket loss where the plaintiff had not alleged that he actually "rejected another prospective buyer's offer." 29 N.Y.3d 137, 143 (2017); *see also Rather v. CBS Corp.*, 886 N.Y.S.2d 121, 128 (1st Dep't 2009) (holding that a plaintiff could not seek lost opportunity damages for allegedly being fraudulently induced to stay with his employer when he "never identified a single opportunity with specified terms that was actually available to him and which he declined to accept because of [the defendant's] actions").

Here, Beef Holdings's alleged damages arise from its purported lost opportunity to pursue an alternative sale of Keystone's U.S. operations to the Other Bidder. Specifically, Beef Holdings alleges that the Other Bidder "expressed a desire to buy Keystone's U.S. operations . . . at a price between $1.6 billion and $1.75 billion." App'x 21. Although the complaint refers to this communication as "the Other Bidder's bid," *id.*, Beef Holdings does not allege that this was a concrete offer with "specified terms" that Keystone would have accepted absent Tyson's alleged fraudulent misrepresentation. *Rather*, 886 N.Y.S.2d at 128; *see* App'x 21 (alleging only that

"Other Bidder *appeared willing* to pay up to $1.75 billion" (emphasis added)). In this manner, it appears more speculative than those alternative opportunities that have typically been accepted by courts applying New York law as a basis for special damages. Indeed, even in *In re MarketXT Holdings Corp.*, a nonprecedential decision by a bankruptcy court cited favorably by Beef Holdings, the court held that the plaintiff had sufficiently pled "the loss of an opportunity to make a deal that would have resulted in another company's acquisition" of certain entities based on allegations that a prior auction had led to "proposals from several potential acquirers," 2006 WL 2864963, at *2, *21 (Bankr. S.D.N.Y. Sept. 29, 2006), not—as we have here—a mere "express[ion]" of "desire" to purchase the business, App'x 21.

In any case, even assuming that the Other Bidder's potential offer was sufficiently concrete so as to support special damages, Beef Holdings's claim suffers a different fatal weakness: Beef Holdings argues that Keystone's U.S. operations effectively sold for a purchase price of $1.45 billion—that is, two-thirds of the $2.37 billion demanded by Tyson less the $200 million in agreed upon price adjustments—which is below the $1.6 billion to $1.75 billion that the Other Bidder was allegedly anticipated to offer. *See* Opening Br. at 10. But concluding based on these arguments that Beef Holdings suffered out-of-pocket damages of between $150 million and $300 million, as Beef Holdings urges us to do, *see id.* at 23, requires us to assume that the overseas operations, based in Asia, would have been sold for one-third Tyson's purchase price in the counterfactual circumstance in which Beef Holding pursued the Other Bidder's offer for the U.S. operations. This is pure speculation. Beef Holdings can point to no allegations to suggest that it had some alternative offer for the overseas operations. Instead, Beef Holdings merely asserts that "[t]he value of Keystone's Asia business existed regardless of whether it was monetized." Reply Br. at 5. Maybe so—but in order to support special damages that value must be supported by concrete

allegations of "pass[ed] up . . . business opportunities," generally in the form of lost profits from operating the business or from an alternative sale. *Schonfeld*, 218 F.3d at 183. Beef Holdings offers neither in connection to the overseas operations.

To sustain a fraud action premised on special damages, a plaintiff must sufficiently allege a "difference between the value of the bargain which [the] plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain." *Cont'l Cas. Co. v. PricewaterhouseCoopers, LLP*, 15 N.Y.3d 264, 271 (2010). Here, Beef Holdings's argument that the "value of the bargain" it received was less than the "value of the consideration" offered in exchange rests on a wholly speculative theory of the consideration it could have received for Keystone's overseas operations had they been sold or operated on their own. *Id.* Accordingly, the district court did not err in dismissing Beef Holdings's fraud claims.

\* \* \*

We have considered all of Beef Holdings's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court