Cindy L. PASSIGLIA, f/k/a Cindy L. Hahn, individually and on behalf of all others similarly situated, Plaintiff,

v.

NORTHWELL HEALTH, INC., f/k/a North Shore–Long Island Jewish Health Care, Inc., North Shore University Hospital, Regional Claims Recovery Service, and Ingram & Associates LLC, Defendants.

16–CV–3611 (SJF)(ARL)

United States District Court, E.D. New York.

Filed 05/12/2017

Craig B. Sanders, Sanders Law, PLLC, David M. Barshay, Barshay Sanders, PLLC, Todd D. Muhlstock, The Muhlstock Law Firm PC, Garden City, NY, Mitchell L. Pashkin, Huntington, NY, for Plaintiff.

Arthur Sanders, Barron & Newburger, P.C., New City, NY, Michael D. Slodov, Sessions, Fishman, Nathan & Israel, L.L.C., Chagrin Falls, OH, for Defendants.

## OPINION and ORDER

FEUERSTEIN, District Judge:

On or about June 29, 2016, plaintiff Cindy L. Passiglia, f/k/a Cindy L. Hahn ("plaintiff" or "Passiglia"), commenced this putative class action against defendants Northwell Health, Inc., f/k/a North Shore–Long Island Jewish Health Care, Inc. ("Northwell Health" or "NSLIJ"); North Shore University Hospital ("NSUH"); Regional Claims Recovery Service ("RCRS"); and Ingram & Associates LLC ("Ingram")[1], and filed an amended complaint asserting claims seeking damages for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et*

1. By letter to the Honorable Arlene R. Lindsay, United States Magistrate Judge, dated May 1, 2017, plaintiff, *inter alia*, advised the Court that she has settled her claims against Northwell Health, NSUH and RCRS. (Docket Entry ["DE"] 36).

*seq.*, and for common law fraud. Pending before the Court is Ingram's motion to dismiss, *inter alia*, plaintiff's common law fraud claims against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief. For the reasons set forth below, Ingram's motion is granted to the extent set forth herein.

## I.  BACKGROUND

### A.  Factual Background [2]

Sometime after plaintiff incurred a debt for personal medical services, she "fell behind on payments allegedly owed on the alleged debt[,]" (Amended Complaint ["Am. Compl."], ¶¶ 17–18), and her "debt was assigned or otherwise transferred to RCRS and [Ingram] for collection." (*Id.*, ¶ 19).

RCRS's initial communication to plaintiff was by letter dated July 1, 2015 ("the RCRS Letter"). (Am. Compl., ¶¶ 20–21 and Ex. 1). The detachable upper portion of the RCRS Letter, which was to be returned with payment of the debt, *inter alia*, (i) indicates that the "RCR File No." is 17672505 and the balance due is three hundred fourteen dollars ($314.00), (ii) contains a return address in Melville, New York; a remittance address in Boston, Massachusetts; a website address of www.regionalclaimsrecovery.com; and a serial number of "17672505 07012015 00031400 9," and (iii) provides an area for the recipient to provide credit card information as a form of payment. (*Id.*, Ex. 1). Immediately below the detachable section, the RCRS Letter, *inter alia*, (i) indicates that the "Provider/Original Creditor" was Paans Medicine, the doctor was Sharmilee V. Shetty, MD, and the treatment date was April 14, 2015; and (ii) contains informa-tion about RCRS, including its name, that it is a division of NHLIJ, its aforementioned website, a toll-free number ending in –0302, a telephone number for those who speak Spanish, a fax number with the area code (631), a New York City Department of Consumer Affairs License Number of 0907774, and the phrase, "\*\*\*WE'RE HERE TO HELP YOU\*\*\*" in bold type. (*Id.*)

The body of the RCRS Letter provides: "We have been asked to assist you in resolving your account as shown above. You may be responsible for the balance due either because you do not have insurance coverage, or the treating physician does not participate in your insurance plan. It is your responsibility to know the terms and limits of your insurance coverage. Please refer to your explanation of benefits (EOB) or call your carrier if you have any questions regarding your obligation for the balance due. Please make your check payable to Paans Medicine and include your account number on the check or complete and return the credit card information above.

You can also resolve your account by making a payment or providing new insurance information by calling toll free (xxx) xxx–0302 between the hours of 9:00 AM and 5:00 PM or by visiting our website at www.regionalclaimsrecovery.com. Voice mail messages left after hours will be returned the next business day.

Our goal is to help you conclude your account by

- processing available insurance benefits

---

**2.**  The factual allegations in the complaint are assumed to be true for purposes of this motion, "unless contradicted by more specific allegations or documentary evidence," *L–7*

*Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011), and do not constitute findings of fact by the Court.

- establishing a repayment plan that fits within your budget
- offering financial assistance if you fall within certain guidelines

We encourage you to write, call or visit our website. Thank you."

(Am. Compl., Ex. 1). The bottom of the RCRS Letter contains, *inter alia*, a validation notice; the phrase, "[ ] **R**esults through **C**ooperation and **R**espect for each other [,]" in italics; the statement, "North Shore–Long Island Jewish Health Care, Inc. is a part of the North Shore–Long Island Jewish Health System[;]" and the code, "1ONREGC011340." (*Id.*) (emphasis in original). The names "Regional Claims Recovery Service" or "regionalclaimsrecovery," or the initials "RCR," appear in the RCRS Letter nine (9) times, including in the website addresses and the letters in bold type in the "**R**esults through **C**ooperation and **R**espect" phrase. (*Id.*)(emphasis in original).

Ingram subsequently contacted plaintiff by letter dated August 14, 2015 ("the Ingram Letter"). (Am. Compl., ¶¶ 22–23 and Ex. 2). The detachable upper portion of the Ingram Letter, which was to be returned with payment of the debt, *inter alia*, (i) similarly indicates that the "Ingram File Number" is 17672505 and the balance due is three hundred fourteen dollars ($314.00), and provides an area for the recipient to provide credit card information as a form of payment, but (ii) contains a return address in Franklin, Tennessee; a remittance address in Minneapolis, Minnesota; a website address of https://www.usapaymentexchange.com/iai3; and a serial number of "17672505 08142015 00031400 3." (*Id.*, Ex. 2). Immediately below the detachable section, the Ingram Letter, *inter alia*, (i) also indicates that the "Provider/Original Creditor" was Paans Medicine, the doctor was Sharmilee V. Shetty, MD, and the treatment date was April 14, 2015, but (ii) contains information

about Ingram, including its name and logo, a toll-free telephone number ending in – 7679, a fax number with the area code (615), and a New York City Department of Consumer Affairs License Number of 1474471–DCA. Like the RCRS Letter, beneath the Ingram information is the phrase, "***WE'RE HERE TO HELP YOU***" in bold type. (*Id.*)

The body of the Ingram Letter provides: "Sometimes mail gets misplaced and sometimes the timing is bad. We would still like to assist you in resolving your account.

We are required to tell you that this communication is from a debt collector and any information we obtain will be used to collect the debt.

We would certainly appreciate receiving your check or money order payable to: Paans Medicine, or take a moment to complete the following and return the letter to our office, in the enclosed envelope, so that we can promptly review your account and take the appropriate action.

[Options are given to enclose payment; to authorize a credit card charge for the balance designated on the letter; or to provide proof of prior payment, an explanation for non-payment, or a telephone number and "best time to call" in order to receive a telephone call to discuss the account.]

If you still believe that you have insurance coverage for the treatment above, we suggest you contact your carrier and find out what is delaying payment of your claim. After contacting your carrier, either call our office or visit our website to provide the insurance information needed to process your account. Thank you for your cooperation."

(Am. Compl., Ex. 2). The bottom of the Ingram Letter contains Ingram's name, the toll-free telephone number ending in –

7679 and the code, "1ONREGCR011341;" and indicates, *inter alia*, "This collection agency is licensed by the Collection Service Board, State Department of Commerce and Insurance, 500 James Robertson Parkway, Nashville, TN 37243." (*Id.*) The name "Ingram" or "Ingram & Associates" appears six (6) times in the Ingram Letter. (*Id.*) Unlike the RCRS Letter, the Ingram Letter does not contain a validation notice.

Both the RCRS Letter and the Ingram Letter bear similar typeface, text placement, style, form and credit card graphics.

### B. Procedural History

On or about June 29, 2016, plaintiff commenced this putative class action against Northwell Health, NSUH, RCRS and Ingram (collectively, "defendants"), and filed an amended complaint asserting fourteen (14) causes of action seeking damages for Ingram's and RCRS's respective violations of the FDCPA, and a common law fraud claim against all defendants. Specifically, the amended complaint alleges: (1) that Ingram violated (a) 15 U.S.C. §§ 1692g(a)(3), (4) and (5) (first through third causes of action, respectively), (b) 15 U.S.C. § 1692g (sixth and tenth causes of action), and (c) 15 U.S.C. § 1692e (seventh and eleventh causes of action); (2) that RCRS violated (a) 15 U.S.C. § 1692g (fourth and eight causes of action), and 15 U.S.C. § 1692e (fifth and ninth causes of action); (3) that Ingram and RCRS both violated 15 U.S.C. §§ 1692e(10) and (14) and 1692j (twelfth through fourteenth causes of action, respectively); and (4) that all defendants committed fraud (fifteenth cause of action).

With respect to plaintiff's fifteenth cause of action seeking damages for common law fraud, the amended complaint asserts the following allegations:

"207. INGRAM's August 14, 2015 letter to Plaintiff includes the statement, 'Sometimes mail gets misplaced ... We would still like to assist you in resolving your account.'

208. Such statement, in what is the first communication from INGRAM, is meant to make Plaintiff believe that the letter is not the the [sic] first communication from INGRAM.

209. Such statement, in what is the first communication from Defendant INGRAM, is meant to make Plaintiff believe that there was prior communication from INGRAM.

210. RCRS's July 1, 2015 letter to Plaintiff is striking [sic] similar to INGRAM's August 14, 2015 letter to Plaintiff.

211. Both letters to Plaintiff bear the same serial number, '17672505 00031400' [sic].

212. Both letters to Plaintiff bear the same typeface, text placement, style, form and graphics.

213. RCRS's internal file number for Plaintiff is 17672505.

214. INGRAM's internal file number for Plaintiff is the same, 17672505.

215. The bottom of the RCRS letter to Plaintiff states, '1ONREGC011340.'

216. The bottom of the INGRAM letter to Plaintiff letter [sic] states, '1ON-REGC011341 [sic].'

217. Either RCRS and INGRAM are the same company, or INGRAM is impersonating RCRS.

218. RCRS (a division of either NSLIJ or NSUH), INGRAM, NSLIJ and NSUH are working in concert to deceive consumers.

219. Defendants are working in concert to make consumers believe that there was a prior letter from INGRAM.

220. Defendants are working in concert to make consumers believe RCRS and INGRAM are the same company.

221. Defendants' conduct, as described herein, was meant to make the Plaintiff believe that the letter from INGRAM was not the the first communication from INGRAM.

222. Defendants' conduct, as described herein, was done to make consumers believe RCRS and INGRAM are the same company.

223. Defendants' conduct, as described herein, was done to make consumers believe RCRS and INGRAM are the same company, so that INGRAM would not have to provide consumers with their rights under 15 U.S.C. § 1692g(a)(3) and 15 U.S.C. § 1692g(a)(4) 15 U.S.C. § 1692g(a)(5) [sic].

224. Plaintiff believed RCRS and INGRAM were the same company.

225. The purpose of Defendants' scheme is to discourage debt disputes by not providing notice of the consumer's rights under 15 U.S.C. § 1692g(a)(3).

226. The purpose of Defendants' scheme is to discourage debt validation requests by not providing notice of the consumer's rights under 15 U.S.C. § 1692g(a)(4).

227. The purpose of Defendants' scheme is to discourage requests for original creditor information by not providing notice of the consumer's rights under 15 U.S.C. § 1692g(a)(5).

228. The purpose of Defendants' scheme is to increase revenue through the discouraging of debt disputes.

229. The purpose of Defendants' scheme is to increase revenue through the discouraging of debt validation requests.

230. The purpose of Defendants' scheme is to increase revenue through the discouraging of requests for original creditor information.

231. Because of Defendants' conduct, as described herein, Plaintiff's belief that RCRS and INGRAM were the same company was reasonable.

232. Defendants' conduct, as described herein, was fraudulent.

233. Defendants' conduct, [sic] is pervasive.

234. Attached hereto as 'Exhibit 3' is a small sampling of INGRAM letters meant to look like RCRS [sic] letter.

235. The letters are identical in all respects, except that some list INGRAM and some list RCRS.

236. As a result of Defendants' fraudulent conduct, Plaintiff was damaged in an amount to be determined at trial." (Am. Compl., ¶¶ 207–236).

Plaintiff alleges, *inter alia*, that as a result of defendants' actions, she "suffered emotional distress, worry, aggravation, frustration, depression and confusion[;] . . . was caused to be distracted from her work[;] . . . lost time at work[;] . . . was caused to waste her personal time[;] . . . [and] fought with her husband[,] . . . result[ing] in marital discord[ ] . . . [and] divorce." (Am. Compl., ¶¶ 24–30).

Ingram now moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss plaintiff's common law fraud claim (fifteenth cause of action) against it, as well as plaintiff's claims seeking "a finding that Defendant's is [sic] a fraud," and awarding her actual and punitive damages, (Am. Compl., ¶ 236 and p. 19, ¶¶ d, g, h), for failure to state a claim for relief.

## II. DISCUSSION

### A. Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. 544, 127 S.Ct. at 1959.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013) (quotations and citation omitted); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679, 129 S.Ct. 1937. "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, be-

cause they are no more than conclusions, are not entitled to the assumption of truth." *Id.*; *see also Ruston v. Town Bd. of Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

■ Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120–21 (2d Cir. 2010); *accord Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 729–30 (2d Cir. 2013). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

■ In deciding a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *see also ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014). "[M]emoranda and supporting affidavits in opposition to a motion to dismiss cannot be used to cure a defective complaint." *Goodman v. Port Auth. of N.Y. & N.J.*, 850 F.Supp.2d 363, 380 (S.D.N.Y. 2012); *see also New York v. Mountain Tobacco Co.*, 55 F.Supp.3d 301, 315 (E.D.N.Y. 2014) ("[O]n a motion to dismiss, . . a plaintiff may not supplement a deficient pleading through additional facts contained in affidavits."); *Telebrands Corp. v. Del Labs., Inc.*, 719 F.Supp.2d 283, 290 (S.D.N.Y. 2010) ("[A]ffidavits are

inadmissible to cure a defect in the complaint on a motion to dismiss.") Accordingly, the Court has not considered any of the extrinsic evidence submitted by the parties in support of, or in opposition to, Ingram's motion to dismiss.

## B. Fraud Claim

■ "To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Financial Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015); *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 178, 919 N.Y.S.2d 465, 944 N.E.2d 1104 (2011) ("Generally, in a claim for fraudulent misrepresentation, a plaintiff must allege a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury[.]" (quotations and citation omitted)); *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 318, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995) ("The essential elements of a cause of action for fraud are representation of a material existing fact, falsity, *scienter*, deception and injury[.]" (quotations and citation omitted)).

### 1. Material Misrepresentation or Omission of Fact

■ "Not every misrepresentation or omission rises to the level of fraud.[ ] An omission or misrepresentation may be so trifling as to be legally inconsequential . . . ." *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 350, 704 N.Y.S.2d 177, 725 N.E.2d 598 (1999) (footnote omitted); *see also Aguirre v. Best Care Agency, Inc.*,

961 F.Supp.2d 427, 449 (E.D.N.Y. 2013) ("Misrepresentations that are so trifling as to be legally inconsequential are not actionable representations of fact that can support a fraud claim." (quotations and citation omitted)). "[S]tatements will not form the basis of a fraud claim when they are mere 'puffery' or are opinions as to future events." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994); *see also High Tides, LLC v. DeMichele*, 88 A.D.3d 954, 958, 931 N.Y.S.2d 377 (2011) (holding that statements "which amount to no more than vague expressions of hope and future expectation," or which are "mere opinion and puffery," "provide an insufficient basis upon which to predicate a claim of fraud." (quotations, alterations and citations omitted)). Moreover, "speculation and expressions of hope for the future [ ] are not actionable representations of fact under common law theories of fraud[.]" *Karakus v. Wells Fargo Bank, N.A.*, 941 F.Supp.2d 318, 344 (E.D.N.Y. 2013) (quotations, alterations and citation omitted); *see also Consolidated Bus Transit, Inc. v. Treiber Grp., LLC*, 97 A.D.3d 778, 779, 948 N.Y.S.2d 679 (2012) ("Representation of opinion or a prediction of something which is hoped or expected to occur in the future will not sustain an action for fraud[.]" (quotations, alterations and citation omitted)). Furthermore, a statement "cannot be interpreted as a misrepresentation, . . . [that] has no express or implied content that may be regarded, in the context in which it was made, as either true or false." *Giannetto v. Knee*, 82 A.D.3d 1043, 1045, 919 N.Y.S.2d 176 (2011).

■ The two (2) statements in the Ingram Letter that are challenged by plaintiff are: (i) the first phrase in the sentence, "*Sometimes mail gets misplaced and sometimes the timing is bad*[;]" and (ii) "We would still like to assist you in resolving your account." (Am. Compl., ¶ 207 and

Ex. 2) (emphasis added). Since the former statement is inherently speculative and does not have any content that may be regarded as true or false, and the latter statement constitutes a mere expression of hope, neither statement provides a basis upon which to predicate a claim for fraud under New York law.

Although "a plaintiff *may* base a fraud claim on a statement of future intention if she can 'allege facts sufficient to show that the promisor, at the time the time the representation was made, never intended to honor the promise[,]'" *Karakus*, 941 F.Supp.2d at 344 (quoting *Pope v. N.Y. Prop. Ins. Underwriting Ass'n*, 66 N.Y.2d 857, 859, 498 N.Y.S.2d 360, 489 N.E.2d 247 (1985)), the amended complaint is devoid of any facts from which it may reasonably be inferred that Ingram ever intended not to assist plaintiff in resolving her account. Indeed, plaintiff does not even allege that she ever sought Ingram's assistance, or that Ingram refused to assist her in resolving her account. Accordingly, the factual allegations in the amended complaint are insufficient to state a plausible claim of a material misrepresentation or omission of fact.

### 2. Reasonable Reliance

■ "To plead a claim for fraud in the inducement or fraudulent concealment, plaintiff must allege facts to support the claim that it justifiably relied on the alleged misrepresentations." *ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.*, 25 N.Y.3d 1043, 1044, 10 N.Y.S.3d 486, 32 N.E.3d 921 (2015); *see also Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of Am.*, 51 F.Supp.3d 379, 393 (S.D.N.Y. 2014) ("[T]o prevail on a claim of fraud, a plaintiff must show that it actually relied on the purported fraudulent statements and that its reliance was reasonable or justifiable." (quotations and citation omitted)); *Nabatkhorian v. Nabatkhorian*, 127 A.D.3d 1043, 1044, 7 N.Y.S.3d 479 ( 2015) ("An essential

element of any fraud claim is that there must be reasonable reliance, to a party's detriment, upon the representations made by the defendant against whom the fraud claims has been asserted[.]" (quotations, alterations and citations omitted)). "The plaintiff must show a belief in the truth of the representation and a change of position in reliance on that belief." *Nabatkhorian*, 127 A.D.3d at 1044. 7 N.Y.S.3d 479, 127 A.D.3d 1043.

■ Although plaintiff alleges that she "believed RCRS and [Ingram] were the same company," (Am. Compl., ¶ 224), as a result of the purported misrepresentations in the Ingram Letter, the amended complaint is devoid of any facts from which it may reasonably be inferred that plaintiff changed her position in reliance on that belief, *i.e.*, that she did anything, or refrained from doing something, in reliance thereupon, to her detriment. Accordingly, the amended complaint fails to state a plausible common law fraud claim under New York law. *See, e.g. SRM Global Master Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C.*, 829 F.3d 173, 177–78 (2d Cir. 2016), *petition for cert. filed*, (Sept. 22, 2016) (No. 16–372) (affirming dismissal of the plaintiff's common law fraud claims absent any allegations that it actually purchased or sold stock, or entered into or unwound a swap agreement, in reliance on the defendants' alleged misrepresentations); *Batson v. Rim San Antonio Acquisition, LLC*, No. 15-cv-07576, 2016 WL 6901312, at * 14 (S.D.N.Y. Nov. 22, 2016) (holding that the plaintiffs' failure to allege, *inter alia*, that their belief regarding the purported misrepresentation caused them to take, or decline to take, any action as a result, was fatal to their claim).

### 3. Injury

■ Moreover, the Court of Appeals of New York recently held:

"Critically, a false representation does not, without more, give rise to a right of action, either at law or in equity, in favor of the person to whom it is addressed. To give rise, under any circumstances, to a cause of action, either in law or equity, reliance on the false representation must result in injury. [ ] If the fraud causes no loss, then the plaintiff has suffered no damages . . . ." *Connaughton v. Chipotle Mexican Grill, Inc.*, 29 N.Y.3d 137, 53 N.Y.S.3d 598, 75 N.E.3d 1159, 2017 WL 1553000 (N.Y. May 2, 2017) (quotations, alterations and citation omitted). "In New York, . . . the true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong or what is known as the 'out-of-pocket' rule . . . ." *Id.* (quotations, alterations and citation omitted); *accord Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996); *see also Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir. 1993) ("New York law awards only 'out-of-pocket' expenses in fraud cases, entitling plaintiffs to damages solely for their actual pecuniary losses[,] . . . [and] [t]hose losses must be the direct, immediate, and proximate result of the misrepresentation[,] . . . [and] independent of other causes." (quotations and citations omitted)). "Under that rule, damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them from what they might have gained." *Connaughton*, 53 N.Y.S.3d 598, 75 N.E.3d at 1163, 2017 WL 1553000 (quotations, alterations and citation omitted); *accord Lama Holding*, 88 N.Y.2d at 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370.

The amended complaint "is fatally deficient because [plaintiff] did not assert compensable damages resulting from [defendants'] alleged fraud." *Connaughton*, 53 N.Y.S.3d 598, 75 N.E.2d at 1163, 2017 WL 1553000. Indeed, in her memorandum of law in opposition to Ingram's motion to dismiss, plaintiff only conclusorily asserts that she "fell for [defendants'] fraudulent scheme, which resulted in her being damaged," and cites to paragraph 231 of her amended complaint in support thereof, (Plf. Opp. at 2–3), which asserts, "Because of Defendants' conduct, as described herein, Plaintiff's belief that RCRS and [Ingram] were the same company was reasonable."[3] (Am. Compl., ¶ 231). Although plaintiff also asserts that she suffered emotional distress, worry, aggravation, frustration, depression, confusion, distraction from work, lost time at work, waste of her personal time and marital discord resulting in divorce, (*id.*, ¶¶ 24–30), "[i]n a fraud action, a plaintiff may recover only the actual pecuniary loss sustained as a direct result of the wrong." *Continental Cas. Co. v. PricewaterhouseCoopers, LLP*, 15 N.Y.3d 264, 271, 907 N.Y.S.2d 139, 933 N.E.2d 738 (2010); *see also Dress Shirt Sales, Inc. v. Hotel Martinique Assocs.*, 12 N.Y.2d 339, 343, 239 N.Y.S.2d 660, 190 N.E.2d 10 (1963) ("[I]n an action for damages for fraud actual pecuniary loss must be shown.") Nowhere in the amended complaint, or any of her papers submitted in opposition to Ingram's motion to dismiss, including her affidavit, does plaintiff allege that she sustained any out-of-pocket expenses directly and proximately resulting from the purported misrepresentations in the Ingram Letter, and independent of other causes,

---

**3.** Even assuming that plaintiff's citation to paragraph 231 of the Amended Complaint was a typographical error, the Amended Complaint only conclusorily asserts, "As a result of Defendants' fraudulent conduct, Plaintiff was damaged in an amount to be determined at trial." (Am. Compl., ¶ 236; *see also id.*, ¶ 31). That allegation is insufficient to state a plausible claim that plaintiff sustained a pecuniary or out-of-pocket loss or injury as a result of defendants' purported fraud.

**140**

*i.e.*, from the alleged violations of the FDCPA[4], *see, e.g. Warren v. John Wiley & Sons, Inc.*, 952 F.Supp.2d 610, 623 (S.D.N.Y. 2013) ("Because Plaintiffs have not identified a distinct harm stemming from the alleged fraudulent conduct, they have failed to state claims for fraud"); or that she "had something of value, was defrauded by [defendants] into relinquishing it for something of lesser value, and that the difference between the two constituted [her] pecuniary loss." *Rather v. CBS Corp.*, 68 A.D.3d 49, 58, 886 N.Y.S.2d 121 (2009), *lv. denied*, 13 N.Y.3d 715, 895 N.Y.S.2d 314, 922 N.E.2d 903 (2010).

■ Where, as here, a plaintiff claims only mental or emotional injuries, or damages that are remote, speculative or undeterminable, or not independent of other causes, the complaint fails to state a plausible fraud claim under New York law. *See, e.g. Kregos*, 3 F.3d at 665 (holding that damages that are "too remote" or speculative are not recoverable in fraud cases); *Carofino v. Forester*, 450 F.Supp.2d 257, 269 (S.D.N.Y. 2006) ("[D]amages recoverable for fraud do not include emotional distress." (quotations and citation omitted)); *Lama Holding Co.*, 88 N.Y.2d at 422, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (holding that damages that are "undeterminable" or speculative cannot serve as the basis of a fraud claim); *Williams v. Mann*, 143 A.D.3d 813, 813–14, 38 N.Y.S.3d 818 (2016) ("[T]he defendant established his prima facie entitlement to judgment as a matter of law by demonstrating that the sole damages claimed to have been sustained by the plaintiff were pain, suffering, and mental anguish."); *O'Neill v. O'Neill*, 264 A.D.2d 766, 767, 694 N.Y.S.2d 772 (1999) (finding that the plaintiff could not sustain his

fraud cause of action based solely on allegations that he suffered an emotional injury). Accordingly, Ingram's motion to dismiss plaintiff's common law fraud claims against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and plaintiff's common law fraud claims are dismissed in their entirety with prejudice for failure to state a claim for relief.

### III. CONCLUSION

For the reasons set forth above, Ingram's motion to dismiss plaintiff's common law fraud claims against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and plaintiff's common law fraud claims are dismissed in their entirety with prejudice.

SO ORDERED.

4. In other words, based upon the allegations in the amended complaint, had Ingram not purportedly violated the FDCPA, there would be no harm to plaintiffs. *See Warren v. John Wiley & Sons, Inc.*, 952 F.Supp.2d 610, 623 (S.D.N.Y. 2013). Thus, the amended complaint does not identify "a distinct harm stemming from the alleged fraudulent conduct[.]" *Id.*